1  Guy B. Wallace (SBN 176151)
   gwallace@schneiderwallace.com
2  Mark T. Johnson (SBN 76904)
   mjohnson@ schneiderwallace.com
3  Andrew P. Lee (SBN 245903)
   alee@ schneiderwallace.com
4  SCHNEIDER WALLACE
   COTTRELL BRAYTON KONECKY LLP
5  180 Montgomery Street, Suite 2000
   San Francisco, CA 94104
6  (415) 421-7100
   (415) 421-7105 (Fax)
7
8  Paula D. Pearlman (SBN 109038)
   Paula.Pearlman@lls.edu
9  Maria Michelle Uzeta (SBN 164402)
   Michelle.Uzeta@lls.edu
10 DISABILITY RIGHTS LEGAL CENTER
   800 S. Figueroa Street, Suite 1120
11 Los Angeles, CA 90017
   (213)736-1031
12 (213) 736-1428 (Fax)
13
   Attorneys for the Plaintiff Class (Continued on next page)

14

15

**UNITED STATES DISTRICT COURT**

16

**CENTRAL DISTRICT OF CALIFORNIA**

17

18

19  MARK WILLITS, JUDY GRIFFIN, BRENT PILGREEN, and CALIF, on behalf of themselves and all others similarly situated,

20

21              Plaintiffs,

22  vs.

23  CITY OF LOS ANGELES, a public entity,

24              Defendant.

25

26

27

28

| | |
|---|---|
| Case No.: CV 10-05782 CBM (RZx) | |

**CLASS ACTION**

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date:      January 8, 2013
Time:      10:00 a.m.
Dept:      Courtroom 2, 2nd Floor
Hon. Consuelo B. Marshall

David Borgen (SBN 99354)
dborgen@gdblegal.com
Linda M. Dardarian (SBN 131001)
ldardarian@gdblegal.com
Jason H. Tarricone (SBN 247506)
jtarricone@gdblegal.com
GOLDSTEIN, DEMCHAK, BALLER, BORGEN & DARDARIAN
300 Lakeside Drive, Suite 1000
Oakland, CA  94612
(510) 763-9800
(510) 835-1417 (Fax)

William C. McNeill (SBN 64320)
wmcneill@las-elc.org
Jinny Kim (SBN 208953)
jkim@las-elc.org
LEGAL AID SOCIETY – EMPLOYMENT LAW CENTER
180 Montgomery Street, Suite 600
San Francisco, California 94104
(415) 864-8848
(415) 593-0096 (Fax)

# **TABLE OF CONTENTS**

**Page(s)**

NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY
JUDGMENT ..................................................................................I

I.      INTRODUCTION ........................................................................ 1

II.     PROCEDURAL HISTORY ........................................................... 2

III.    LEGAL STANDARD FOR SUMMARY JUDGMENT ..................... 4

IV.     SIDEWALKS ARE A SERVICE, PROGRAM, OR ACTIVITY
        COVERED BY TITLE II OF THE ADA AND SECTION 504 OF THE
        REHABILITATION ACT................................................................ 6

V.      THE CITY CANNOT ASSERT AN UNDUE BURDEN DEFENSE WITH
        RESPECT TO NEW CONSTRUCTION OR ALTERATIONS UNDER
        TITLE II OF THE ADA AND SECTION 504 OF THE
        REHABILITATION ACT.............................................................. 10

VI.     THE CITY CANNOT ASSERT AN UNDUE BURDEN DEFENSE WITH
        RESPECT TO EXISTING FACILITIES COVERED BY SECTION 504
        OF THE REHABILITATION ACT.................................................. 14

        A.    The Plain Language of the Rehabilitation Act Regulations
              Demonstrate that Neither Congress Nor the Federal Agencies
              Intended to Provide a Defense for Undue Burden. ................... 15

        B.    When Enacting the ADA, Congress Recognized that the
              Rehabilitation Act Regulations Regarding Program Access to
              Existing Facilities Lacked an Undue Burden Defense. ............ 20

VII.    CONCLUSION ......................................................................... 24

i
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF -

437155-13

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Ability Ctr. of Greater Toledo v. City of Sandusky*,
    133 F. Supp. 2d 589 (N.D. Ohio 2001) ..................................................... 13

*Alexander v. Choate*,
    469 U.S. 287, 105 S. Ct. 712, 83 L. Ed. 2d 661 (1985) ......................... 16

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ......................... 5

*Anderson v. Pa. Dep't of Pub. Welfare*,
    1 F. Supp. 2d 456 (E.D. Pa. 1998) ........................................................ 13

*Armstrong v. Wilson*,
    124 F.3d 1019 (9th Cir. 1997) ................................................................. 6

*Asuncion v. Dist. Dir. of the U.S. Immigration & Naturalization Serv.*,
    427 F.2d 523 (9th Cir. 1970) ................................................................... 5

*Baird v. Rose*,
    192 F.3d 462 (4th Cir. 1999) ................................................................. 24

*Barden v. City of Sacramento*,
    292 F.3d 1073 (9th Cir. 2002) ......................................................*passim*

*Bragdon v. Abbott*,
    524 U.S. 624, 118 S. Ct. 2196, 141 L. Ed. 2d 540 (1998) ..................... 16

*Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*,
    No. C 06-5125 SBA, 2009 WL 2987115 (N.D. Cal. Sept. 15, 2009) .............. 13, 14

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ......................... 4

*Consol. Rail Corp. v. Darrone*,
    465 U.S. 624, 104 S. Ct. 1248, 79 L. Ed. 2d 568 (1984) ..................... 15, 16, 20, 21

*Edwards v. Aguillard*,
    482 U.S. 578, 107 S. Ct. 2573, 96 L. Ed. 2d 910 (1987) ......................... 5

**TABLE OF AUTHORITIES: (continued)**                            **Page(s)**

*Fleming v. Yuma Reg'l Med. Ctr.,*
   587 F.3d 938 (9th Cir. 2009) ......................................................... 23

*Forest Conservation Council v. Rosboro Lumber Co.,*
   50 F.3d 781 (9th Cir. 1995) ............................................................. 5

*Frame v. City of Arlington,*
   616 F.3d 476 (5th Cir. 2010) ....................................................... 3, 7

*Frame v. City of Arlington,*
   657 F.3d 215 (5th Cir. 2011) ...................................................... 7, 15

*Horphag Research Ltd. v. Garcia,*
   475 F.3d 1029 (9th Cir. 2007) ..................................................... 4, 5

*Jesperson v. Harrah's Operating Co.,*
   444 F.3d 1104 (9th Cir. 2006) ......................................................... 5

*Kinney v. Yerusalim,*
   9 F.3d 1067 (3d Cir. 1993) .................................................. 12, 13, 14

*Lee v. City of Los Angeles,*
   250 F.3d 668 (9th Cir. 2001) ........................................................... 6

*Lonberg v. City of Riverside,*
   No. EDV970237 SGLAJWX, 2007 WL 2005177
   (C.D. Cal. May 16, 2007) ........................................................ 13, 14

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
   475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) ......................... 5

*Morton v. Mancari,*
   417 U.S. 535, 94 S. Ct. 2474, 41 L. Ed. 2d 290 (1974) ........................ 22

*Novartis Corp. v. Ben Venue Labs., Inc.,*
   271 F.3d 1043 (Fed. Cir. 2001) ................................................... 4, 5

*Parker v. Universidad de Puerto Rico,*
   225 F.3d 1 (1st Cir. 2000) .............................................................. 7

*Pierce v. County of Orange,*
   526 F.3d 1190 (9th Cir. 2008) .............................................. 11, 14, 18

**TABLE OF AUTHORITIES: (continued)**          <u>Page(s)</u>

*Putnam v. Oakland Unified Sch. Dist.*,
   No. C-93-3772 CW, 1995 WL 873734 (N.D. Cal. June 9, 1995).............. 15, 17, 18

*Sch. Bd. of Nassau Cnty., Fla. v. Arline*,
   480 U.S. 273, 107 S. Ct. 1123, 94 L. Ed. 2d 307 (1987) ........................... 16, 20, 21

*Schrader v. Fred A. Ray, M.D., P.C.*,
   296 F.3d 968 (10th Cir. 2002) ........................................................................ 22, 24

*Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*,
   860 F. Supp. 1448 (C.D. Cal. 1993) ...................................................................... 5

*Yeskey v. Penn. Dep't of Corr.*,
   115 F.3d 481 (7th Cir. 1997) ................................................................................ 6

**FEDERAL STATUTES**

29 U.S.C.
   § 794............................................................................................................ 6, 7, 15

42 U.S.C.
   § 12101 ............................................................................................................... 22
   § 12131 ................................................................................................................. 6
   § 12132 ................................................................................................................. 6
   § 12134 ................................................................................................... 20, 21, 23
   § 12201 .......................................................................................................... 22, 23

**FEDERAL REGULATIONS**

28 C.F.R.
   § 35.104 ............................................................................................................. 10
   § 35.150 ...................................................................................................... *passim*
   § 35.151 ................................................................................................... 11, 12, 13
   § 39.150 ........................................................................................................ 19, 20
   § 41.1 ................................................................................................................. 16
   § 41.3 ................................................................................................................. 15
   § 41.57 ........................................................................................................ *passim*

iv
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF -

437155-13

**TABLE OF AUTHORITIES: (continued)**                     Page(s)

45 C.F.R.
    § 84.3.................................................................................................15
    § 84.12...............................................................................................18
    § 84.22.............................................................................16, 17, 19, 21
    § 84.23...............................................................................................11
    § 85.42.........................................................................................19, 20

49 C.F.R.
    § 28.150 ............................................................................................19

42 Fed. Reg. 22,676 (May 4, 1977) ...........................................................18, 19

**OTHER STATUTES**

Cal. Streets & Highways Code
    § 5610...................................................................................................8
    § 5611...................................................................................................8
    § 5614...................................................................................................8
    § 5615...................................................................................................8

Los Angeles Municipal Code § 62.104 .........................................................9

**RULES**

Fed. R. Civ. P.
    56.....................................................................................................4, 5

**OTHER AUTHORITIES**

H.R. Rep. No. 101-485 (111) (1990),
    *reprinted in* 1990 U.S.C.C.A.N. 445 ...........................................12, 21, 23

Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial*, § 14:36
    (Rutter Group 2012)...................................................................................5

437155-13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION AND MOTION FOR PARTIAL**

**SUMMARY JUDGMENT**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 8, 2013, at 10:00 a.m., or as soon thereafter as the matter may be heard by the above-titled court located at 312 North Spring Street, Los Angeles, California 90012, Courtroom 2, Second Floor, Plaintiffs and Class Representatives Mark Willits, Judy Griffin, Brent Pilgreen, and CALIF, on behalf of themselves and the certified class ("Plaintiffs"), will and hereby do move the Court for partial summary judgment against Defendant the City of Los Angeles ("Defendant" or "the City"), as set forth below.  This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place between October 23 and November 26, 2012.

Pursuant to Federal Rule of Civil Procedure 56, Plaintiffs seek partial summary judgment that:

(1)	Public sidewalks in the City of Los Angeles are services, programs, activities, and facilities covered by Title II of the Americans with Disabilities Act ("ADA"), programs, activities, and facilities covered by Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and are subject to the access requirements of both federal laws.  Plaintiffs therefore ask the Court to rule that the City may not assert its First, Fifth, Sixth, Eighth, Ninth, Thirteenth, and Fourteenth Affirmative Defenses with respect to public sidewalk coverage by Title II and Section 504.

(2)	Under Title II of the ADA, there is no undue burden defense available to public entities for failure to make their facilities that have been newly constructed or altered since January 26, 1992, the effective date of the ADA, readily accessible to and usable by persons with disabilities.  Plaintiffs therefore ask the Court to rule that the City may not assert its Seventh and Fifty-Fourth Affirmative Defenses of undue burden with respect to Plaintiffs' ADA claims for City facilities that have been newly constructed or altered since the ADA went into effect on January 26, 1992.

(3)     Under Section 504 of the Rehabilitation Act, there is no undue burden defense available to recipients of federal financial assistance for failure to make their facilities that have been newly constructed or altered since June 3, 1977, the effective date of the Rehabilitation Act regulations, readily accessible to and usable by persons with disabilities.  Plaintiffs therefore ask the Court to rule that the City may not assert its Seventh and Fifty-Fourth Affirmative Defenses of undue burden with respect to Plaintiffs' Section 504 claims for City facilities that have been newly constructed or altered since the Section 504 regulations went into effect on June 3, 1977.

(4)     Under Section 504 of the Rehabilitation Act, there is no undue burden defense available to recipients of federal financial assistance for failure to make their facilities that were in existence prior to June 3, 1977, the effective date of the Rehabilitation Act regulations, readily accessible to persons with disabilities.  Plaintiffs therefore ask the Court to rule that the City may not assert its Seventh and Fifty-Fourth Affirmative Defenses of undue burden with respect to Plaintiffs' Section 504 claims for program access to existing facilities that were constructed prior to June 3, 1977 and that have not been altered since that date.

This Motion is based upon this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, Statement of Uncontroverted Facts and Conclusions of Law, and Declaration of Jason H. Tarricone filed herewith, and on such further written evidence and oral argument as may be presented at or before the time the Court takes this Motion under submission.

II

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF -

437155-13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Plaintiffs Mark Willits, *et al.*, ("Plaintiffs") filed this injunctive relief civil rights lawsuit against Defendant City of Los Angeles, *et al.*, ("Defendant" or the "City") because the City has failed to make its pedestrian rights of way accessible to persons with mobility disabilities.  Throughout the City, class members who use wheelchairs, scooters, and other mobility devices are denied access to the City's pedestrian rights of way and are denied the opportunity to participate fully in public life because curb ramps do not exist or do not comply with disability access design standards, and because sidewalks, crosswalks, and other pedestrian rights of way are in an extreme state of disrepair.  Plaintiffs now move for partial summary judgment on several affirmative defenses asserted by the City that are capable of resolution as a matter of law.

This motion raises three legal questions that are disputed by the parties.  The first is whether public sidewalks within the City are covered by Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504" or the "Rehabilitation Act").  It is well-settled in the Ninth Circuit and other circuits that public sidewalks are covered by the ADA and the Rehabilitation Act and therefore must be made accessible to persons with mobility disabilities because they are programs and facilities that are provided, maintained, and regulated by cities.  The second issue raised by this motion is whether a public entity can escape liability under the ADA and Section 504 by arguing that it would be an undue financial burden to provide access to facilities that the entity newly constructed or altered since the ADA went into effect on January 26, 1992, or since the Section 504 regulations became effective on June 3, 1977.  Again, the law is well-settled that the undue burden defense does not apply to public facilities, like streets and sidewalks, which have been altered or constructed since the applicable effective date of the ADA or Section 504.

The third issue raised by this motion is whether Section 504 of the Rehabilitation Act, a precursor to the ADA that is similar but not identical to the ADA, permits

recipients of federal funding to avoid providing program access for persons with mobility disabilities to existing facilities (i.e., facilities constructed prior to June 3, 1977) by asserting that doing so would be an undue financial burden.  As a court in the Northern District of California has held, the plain language of the Section 504 regulations allows an undue burden defense in some contexts, such as employment, but does not allow a recipient of federal financial assistance to claim that making its existing facilities accessible to people with disabilities would be an undue financial burden.  The Supreme Court has recognized that those regulations are entitled to substantial deference because they were promulgated with the direct oversight and approval of Congress.  In addition, Congress itself has implicitly acknowledged that there is no defense for undue burden in the Rehabilitation Act regulation at issue, 28 C.F.R. § 41.57.

Each of these legal questions is ripe for determination by this Court and will assist the parties in narrowing the issues for trial.  They do not involve disputed factual issues, but rather involve questions of law about the scope of coverage under Title II of the ADA and Section 504 of the Rehabilitation Act, and the availability of the undue burden defense.  The Court should therefore grant Plaintiffs' motion for partial summary judgment and hold that Defendant may not assert these defenses.  In the alternative, the Court can currently resolve these legal issues as rulings on motions *in limine*.

## II.      PROCEDURAL HISTORY

This action was filed in August 2010.  The Court entered its Order certifying the class on January 3, 2011.  (Order on Pls.' Motion for Class Certification, ECF No. 59.)  On June 20, 2011, Defendant filed an Amended Answer to the Complaint, asserting sixty-two affirmative defenses.  (Am. Answer, ECF No. 76.)  By the Amended Answer and arguments made in the course of this litigation, Defendant has raised discrete questions of law appropriate for partial summary judgment.

First, the City has asserted that it is not required by Title II of the ADA to make

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF -

437155-13

its sidewalks accessible to persons with mobility disabilities.  In the opposition to class certification, the City argued that sidewalks are not covered by Title II, relying on a now-withdrawn and overruled opinion by the Fifth Circuit in *Frame v. City of Arlington*, 616 F.3d 476 (5th Cir. 2010).  The City also argued in its motion to dismiss that sidewalks in existence before the ADA became effective need not be made accessible if they have not been altered.  (Mot. to Dismiss at 7-8, ECF No. 41-1.)  And more recently, the City has argued that state and local laws make property owners responsible for maintaining and repairing sidewalks adjacent to their property and relieve the City from any responsibility for making sidewalks accessible to persons with mobility disabilities under Title II of the ADA.  These arguments appear to be advanced by the City in support of its First, Fifth, Sixth, Eighth, Ninth, Thirteenth, and Fourteenth Affirmative Defenses, which state, in part, that:

- Plaintiffs' complaint fails to state a claim upon which relief can be granted (First Affirmative Defense);

- each cause of action is barred because Defendant has complied with the law (Fifth Affirmative Defense);

- each cause of action is barred because Defendant is not obligated to remove barriers from facilities that were constructed or modified prior to the effective date of the law (Sixth Affirmative Defense);

- each cause of action is barred and Plaintiffs are not entitled to injunctive relief because Plaintiffs' injuries were caused by third parties not joined as necessary parties to the action, "including without limitation third parties who own or control the property on which Plaintiffs seeks remediation or third parties who own or control adjoining property" (Eighth and Ninth Affirmative Defenses);

- Defendant has not denied or interfered with the use and enjoyment of the facilities, services, programs, and activities in question (Thirteenth Affirmative Defense); and

- Plaintiffs' causes of action are barred because Defendant has not violated any applicable federal disability access laws (Fourteenth Affirmative Defense).

This Court previously addressed and rejected the City's argument that sidewalks are not covered by Title II of the ADA and that the City has no obligation to make accessible

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF -

437155-13

1   any sidewalks that were in existence in 1992.  (*See* Order on Pls.' Mot. for Class

2   Certification 6 n.5, ECF No. 59; Order on Def.'s Mot. to Stay the Proceedings and to

3   Dismiss the Compl. 6-7, ECF No. 57.)  Plaintiffs move now to ensure that Defendant

4   will be precluded from arguing that public sidewalks in the City of Los Angeles are not

5   covered by Title II of the ADA or Section 504 of the Rehabilitation Act.

6       Next, the City's Seventh Affirmative Defense asserts that "[t]he Complaint, and

7   each purported cause of action alleged in the Complaint, is barred in whole or in part on

8   the ground and to the extent that the relief sought by Plaintiffs would result in an undue

9   financial or administrative burden."  The City's Fifty-Fourth Affirmative Defense also

10  asserts that undue burdens excuse the City from undertaking "the alteration of existing

11  facilities or construction of new facilities."  These affirmative defenses give rise to two

12  legal questions appropriate for summary judgment.  The first is whether the undue

13  burden defense is applicable to facilities that have been newly constructed or altered

14  since the applicable effective date of the ADA or Section 504.  The second is whether

15  the undue burden defense is applicable to claims asserted under Section 504 of the

16  Rehabilitation Act for program access to existing facilities, where neither Section 504

17  nor the relevant implementing regulations allow for or mention the financial burden

18  defense.

19      Plaintiffs respectfully move for partial summary judgment on these three

20  questions of law.

21      **III.   LEGAL STANDARD FOR SUMMARY JUDGMENT**

22      Summary judgment is appropriate where the court determines that "there is no

23  genuine issue as to any material fact and that the movant is entitled to a judgment as a

24  matter of law."  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.

25  Ct. 2548, 91 L. Ed. 2d 265 (1986).  The moving party bears the initial burden of

26  demonstrating the "absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at

27  323; *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007); *Novartis*

28  *Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001).

4

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF -

437155-13

1    Once this initial burden is met, the opposing party must provide specific facts and

2    significant probative evidence demonstrating a genuine factual issue for trial.  *See*

3    *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct.

4    1348, 89 L. Ed. 2d 538 (1986); *Horphag Research*, 475 F.3d at 1035; *Novartis*, 271

5    F.3d at 1046.  There is no issue for trial unless there is sufficient evidence for a trier of

6    fact to render a verdict in favor of the opposing party.  *See Anderson v. Liberty Lobby,*

7    *Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Jesperson v.*

8    *Harrah's Operating Co.*, 444 F.3d 1104, 1110-11 (9th Cir. 2006); *Novartis*, 271 F.3d at

9    1046.

10    Summary judgment is also appropriate for "part of each claim or defense," referred

11    to as "partial summary judgment."  Fed. R. Civ. P. 56(a).  The provisions of Rule 56

12    "make clear that summary judgment may be requested as to any *issue* (any 'part' of a

13    claim or defense) . . . ."  Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure*

14    *Before Trial*, § 14:36 (Rutter Group 2012); *see also Wang Labs., Inc. v. Mitsubishi Elecs.*

15    *Am., Inc.*, 860 F. Supp. 1448, 1450-51 (C.D. Cal. 1993).

16    The interpretation of a statute, including the determination and resolution of

17    ambiguities, is a question of law for the court to decide and thus, a question appropriate

18    for summary adjudication.  *Forest Conservation Council v. Rosboro Lumber Co.*, 50 F.3d

19    781, 783 (9th Cir. 1995); *Asuncion v. Dist. Dir. of the U.S. Immigration &*

20    *Naturalization Serv.*, 427 F.2d 523, 524 (9th Cir. 1970).  The Supreme Court has

21    explained that summary judgment is an appropriate vehicle to determine the meaning of

22    a statute and the legislative purpose behind it.  *Edwards v. Aguillard*, 482 U.S. 578, 594-

23    96, 107 S. Ct. 2573, 96 L. Ed. 2d 910 (1987) (affirming district court's grant of

24    summary judgment on the legislature's intent in enacting a statute).  Plaintiffs' motion

25    concerns the interpretation of the plain language of Title II of the ADA, Section 504 of

26    the Rehabilitation Act, and their implementing regulations, issues that are appropriate

27    for partial summary judgment.

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF -

437155-13

## IV.   SIDEWALKS ARE A SERVICE, PROGRAM, OR ACTIVITY COVERED BY TITLE II OF THE ADA AND SECTION 504 OF THE REHABILITATION ACT.

It is clearly established that sidewalks are subject to the access requirements of Title II of the ADA and Section 504 of the Rehabilitation Act.  Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The ADA defines "public entity" as "'any State or local government [and] and department, agency, special purpose district, or other instrumentality of a State or States or local government.'"  *Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001) (quoting 42 U.S.C. § 12131(1) & *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997)).  The question for this Court is whether the public sidewalks in the City of Los Angeles are part of the City's "services, programs, or activities."

The Ninth Circuit has held that "the ADA's broad language brings within its scope 'anything a public entity does."  *Lee*, 250 F.3d at 691 (quoting *Yeskey v. Penn. Dep't of Corr.*, 115 F.3d 481, 485 (7th Cir. 1997)).  As a result, the Ninth Circuit has also held that "maintaining public sidewalks is a normal function of a city and without a doubt something that the [City] does.  Maintaining their accessibility for individuals with disabilities therefore falls within the scope of Title II."  *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002) (internal citation and quotation marks omitted).  The Ninth Circuit explained that the inclusion of sidewalks within the definition of "services, programs, or activities" of a local government is supported by the plain language of the Rehabilitation Act, which defines "program or activity" as "all of the operations of" a local government.  *Id.* at 1077 (quoting 29 U.S.C. § 794(b)(1)(A)).  The Ninth Circuit reasoned that this conclusion is also supported by the legislative history of the ADA.  Thus, "Title II's prohibition of discrimination in the

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF -

437155-13

1   provision of public services applies to the maintenance of public sidewalks, which is a

2   normal function of a municipal entity." *Id.*

3       Although the Ninth Circuit's decision in *Barden* is sufficient, by itself, to preclude

4   the City's arguments that sidewalks are not covered by Title II and Section 504, it

5   should be noted that the *Barden* decision was recently cited with approval by the Fifth

6   Circuit in the *en banc* decision of *Frame v. City of Arlington*, 657 F.3d 215, 233 (5th

7   Cir. 2011).  Defendant relied on a prior panel opinion in *Frame* to support the argument

8   that sidewalks are not covered by Title II of the ADA.  (*See* Opp'n to Mot. for Class

9   Certification, 9-13 ECF No. 43.)  That earlier decision has been withdrawn, and it is

10  now the law of the Fifth Circuit that "[b]uilding and altering city sidewalks

11  unambiguously are 'services' of a public entity under any reasonable understanding of

12  that term" and that a sidewalk itself "unambiguously is a service, program, or activity of

13  a public entity."  *Frame*, 657 F.3d at 226, 227 ("Although we focus primarily on Title

14  II, our analysis is informed by the Rehabilitation Act, and our holding applies to both

15  statutes.").

16      Consistent with the law of the Ninth Circuit, this Court has already rejected the

17  City's argument and ruled that sidewalks are "part of the 'services, programs, or

18  activities' that Title II of the ADA regulates."  (Order on Pls.' Mot. for Class

19  Certification 6 n.5, ECF No. 59.)  This Court has also held that it is not correct that "a

20  public entity has absolutely no duty to make repairs to facilities existing at the time the

21  ADA became effective."  (Order on Def.'s Mot. to Stay Proceedings 6-7, ECF No. 57.)

22  Although a public entity "may choose 'other methods [that] are effective in achieving

23  compliance,' 28 C.F.R. § 35.150(b)(1), rather than make structural changes to existing

24  facilities," this Court held that "the relevant inquiry in regard to complying with Title II

25  of the ADA is whether individuals with disabilities have meaningful access to the

26  service at issue."  *Id.* at 7 (citing *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 6

27  (1st Cir. 2000)).  Consistent with these earlier decisions and with binding Ninth Circuit

28  precedent, the Court should now hold, as a matter of law, that the public sidewalks

7

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF -

437155-13

1   located in the City of Los Angeles are services, programs, or activities covered by

2   Title II of the ADA and Section 504 of the Rehabilitation Act.

3        Defendant is expected to argue that it is not responsible for maintaining some

4   portion of the sidewalks within the City because state and municipal law provides that

5   property owners may be held responsible for maintaining sidewalks abutting their

6   property.[1]  While those laws may permit the City to shift some of the cost of complying

7   with the ADA to private property owners, they plainly do not absolve the City of its

8   duties under the ADA or responsibility to maintain the pedestrian rights of way.  The

9   California Streets and Highways Code provides that property owners must maintain

10  adjacent sidewalks "in such condition that the sidewalk will not endanger persons or

11  property."  Cal. Sts. & High. Code § 5610.  But the Streets and Highways Code places

12  responsibility squarely on a municipality to inspect its sidewalks and notify property

13  owners of areas needing repair:  "When any portion of the sidewalk is out of repair or

14  pending reconstruction and in condition to endanger persons or property or in condition

15  to interfere with the public convenience in the use of such sidewalk, the superintendent

16  of streets shall notify the owner or person in possession of the property fronting on that

17  portion of such sidewalk so out of repair, to repair the sidewalk."  *Id.* § 5611.  If, after

18  notice by the superintendent of streets, the property owner does not make the required

19  repairs, California law mandates that the superintendent of streets "shall forthwith repair

20  the sidewalk."  *Id.* § 5615; *see also id.* § 5614.

21       The Los Angeles Municipal Code similarly provides that whenever a sidewalk or

22  curb is in need of repair, or "in a condition to interfere with the public convenience in

23  the use thereof," the "Board may require that the owners or occupants of lots . . .

24  fronting on said sidewalk, or curb . . . to repair or reconstruct the sidewalk, driveway or

25  _____

26  [1] Defendant also may argue that some sidewalks, such as those located within private housing developments or those maintained by other public agencies such as Caltrans, are not within the scope of its Title II obligations because the City has not agreed to

27  accept responsibility for them or maintain them.  Such streets and sidewalks do not fall within the scope of this lawsuit.

28

8

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF -

437155-13

curb, or both." L.A. Mun. Code § 62.104.  As with state law, the Municipal Code requires the City to keep itself aware of sidewalk maintenance problems and provide notice to the property owner "of the work required to be done." *Id.* § 62.104(a).  If the property owner does not commence the work within two weeks of notice, "the Board shall have the power to perform the work described in the notice." *Id.* §§ 62.104(b) & (c).

As is evident from the plain language of these statutes, they do not free Defendant from responsibility for maintaining the public sidewalks within the City of Los Angeles. Instead, they confirm that the City has ultimate authority and control over Los Angeles' public sidewalks.  Even if these statutes were inconsistent with the ADA and Rehabilitation Act, which they are not, they could not override the City's accessibility obligations under federal law.  The ADA and Rehabilitation Act require the City to make public sidewalks accessible as one of its "services, programs, or activities," *Barden*, 292 F.3d at 1076-77, and state and municipal law could not nullify the coverage of the ADA and Rehabilitation Act without running afoul of the Supremacy Clause.

Moreover, as a policy matter, if state or municipal law could completely shift responsibility for maintaining public sidewalks from the City to private property owners, then some inaccessible sidewalks might never be covered by the ADA.  For example, private homeowners would likely not be held responsible under federal law for inaccessible sidewalks located on residential streets because homeowners are neither public entities covered by Title II of the ADA, places of public accommodation covered by Title III of the ADA, nor recipients of federal financial assistance covered by the Rehabilitation Act.  Such a result would be contrary to the Ninth Circuit's conclusion that public sidewalks are a program, activity, or service of a city and must be accessible to people with mobility disabilities under Title II and Section 504.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF -

437155-13

1

2

3

### V.    THE CITY CANNOT ASSERT AN UNDUE BURDEN DEFENSE WITH RESPECT TO NEW CONSTRUCTION OR ALTERATIONS UNDER TITLE II OF THE ADA AND SECTION 504 OF THE REHABILITATION ACT.

4   Defendant's Seventh and Fifty-Fourth Affirmative Defenses assert that the City

5   cannot be held liable for failing to make its sidewalks and pedestrian rights of way

6   accessible to people with mobility disabilities because doing so would result in an undue

7   financial burden.  Under Title II of the ADA this undue burden defense is foreclosed

8   with respect to streets, pedestrian rights of way, sidewalks, and curb ramps that have

9   been newly constructed or altered since January 26, 1992.  Similarly, under Section 504

10  of the Rehabilitation Act, this undue burden defense is foreclosed with respect to streets,

11  pedestrian rights of way, sidewalks, and curb ramps that have been newly constructed or

12  altered since June 3, 1977.  Accordingly, Plaintiffs ask the Court to hold that there is no

13  undue burden defense under the ADA to the inaccessibility of City sidewalks,

14  pedestrian rights of way, and curb ramps that have been newly constructed or altered

15  since January 26, 1992, and under Section 504 with respect to the inaccessibility of City

16  sidewalks, pedestrian rights of way, and curb ramps that have been newly constructed or

17  altered since June 3, 1977.

18  Sidewalks, cross walks, curb ramps and other parts of the pedestrian right of way

19  are "facilities" and "services, programs, or activities" under Title II of the ADA and

20  Section 504.  *See* 28 C.F.R. § 35.104 ("Facility means all or any portion of buildings,

21  structures, sites, complexes, equipment, rolling stock or other conveyances, roads,

22  walks, passageways, parking lots, or other real or personal property, including the site

23  where the building, property, structure, or equipment is located."); 45 C.F.R. § 84.3(i)

24  (defining facilities as "buildings, structures, equipment, roads, walks [and] parking

25  lots"); *Barden*, 292 F.3d at 1076-77 (sidewalks fall within the meaning of "service,

26  program, or activity" as defined by Title II and Section 504).  Title II of the ADA only

27  provides the defense of undue financial burden for facilities already in existence as of

28  January 26, 1992, not for facilities newly constructed or altered after that date.  28

10

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF -

437155-13

C.F.R. § 35.150.  The implementing regulations for Title II provide that each facility or part of a facility "altered by, on behalf of, or for the use of a public entity . . . *shall*, to the maximum extent feasible, be altered in such manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities, if the alteration was commenced after January 26, 1992." 28 C.F.R. § 35.151(b)(1) (emphasis added); *see also* 45 C.F.R. § 84.23(b) (Rehabilitation Act regulation providing that altered facilities "shall, to the maximum extent feasible, be altered in such a manner that the altered portion of the facility is readily accessible . . .").  The regulations create similar requirements for new construction. 28 C.F.R. § 35.151(a)(1); 45 C.F.R. § 84.23(a).  By providing that public entities "shall" make new construction and alterations accessible, the ADA and Rehabilitation Act regulations mandate access without providing public entities with the defense of undue financial or administrative burden.  Indeed, undue burden is nowhere mentioned in the regulations for new construction or alteration. *See generally* 28 C.F.R. § 35.151; 45 C.F.R. § 84.23.

The unavailability of an undue burden defense for *newly constructed or altered facilities* is further established by the express provision for such a defense in the separate regulation for program access to *existing facilities*.  Unlike § 35.151 governing new construction and alterations, the ADA regulation governing existing facilities provides that a public entity is not required "to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens." 28 C.F.R. § 35.150(a)(3).[2]  The Title II program access regulation for existing facilities is therefore the only potential source of Defendant's undue burden defense, but it does <u>not</u> apply to new construction or alterations. *See, e.g.*, 28 C.F.R. §§ 35.150 & 35.151; *Pierce v. County of Orange*, 526

---

[2] Under Title II of the ADA and its implementing regulations, "existing facilities" are defined as facilities that were constructed prior to January 26, 1992 and that have not been altered since that date.  28 C.F.R. § 35.151.

1    F.3d 1190, 1216 (9th Cir. 2008) (recognizing that § 35.151, which does not contain an

2    undue burden defense, applies to new construction and alterations).

3          This conclusion is squarely supported by the Third Circuit's decision in *Kinney v.*

4    *Yerusalim*, 9 F.3d 1067 (3d Cir. 1993), *cert. denied sub nom Hoskins v. Kinney*, 114 S.

5    Ct. 1545 (1994).  There, the Third Circuit held that when a public entity decides to alter

6    or construct a facility, the public entity cannot rely on the undue burden defense as a

7    reason for failing to make the facility accessible to persons with disabilities.  *Id.* at 1071

8    ("This obligation of accessibility for alterations does not allow for non-compliance

9    based upon undue burden" and the "regulations concerning new construction and

10   alterations are substantially more stringent.").  In addition to the differences in the plain

11   language between § 35.150, which contains an undue burden defense, and § 35.151,

12   which does not, the court relied on the legislative history of the ADA.  *Id.* at 1074.  That

13   legislative history demonstrates that Congress intended the undue burden or undue

14   hardship defense to be limited to "program access in existing facilities."  H.R. Rep.

15   No. 101-485 (III) at 50 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 473.  Congress'

16   statement that "[n]o other limitation should be implied in other areas" underscores

17   Congress' intent that the defense not apply where new construction or alterations are at

18   issue.  *Id.*; *see also Kinney*, 9 F.3d at 1074.

19         After establishing that the undue burden defense does not apply to new

20   construction or alterations, the Third Circuit went on to explain that the new

21   construction and alteration regulation specifically addresses curb ramps.  That is,

22   § 35.151 requires a city to install curb ramps when it constructs new streets or alters

23   existing streets.  *Kinney*, 9 F.3d at 1072 (citing 28 C.F.R. § 35.151(e), now 28 C.F.R.

24   § 35.151(i)) ("Newly constructed or altered streets, roads, and highways must contain

25   curb ramps or other sloped areas at any intersection having curbs . . . .").  The court also

26   held that street resurfacing constitutes an alteration because it improves the usability of

27   the street.  *Id.* at 1073.  And, because there is no undue burden defense to these specific

28   requirements with respect to curb ramps, the Third Circuit held that when a city chooses

1    to resurface a street, it must install curb ramps at the intersections on that street. *Id.* at

2    1074-75. A city that resurfaces its streets cannot argue that installing curb ramps would

3    be an undue burden because the alteration of the street necessarily means the curbs are

4    no longer subject to the existing facilities regulation. *Id.* 1075 ("Thus, once the City

5    undertakes to resurface a street, the accompanying curbs are no longer to be considered

6    as existing facilities, subject to the 'undue burden' defense of § 35.150(a)(3). They are

7    now, pursuant to the language of subpart (e), incorporated with a facility under

8    alteration, pursuant to § 35.151, so that the 'undue burden' defense is no longer

9    available.").

10   Following *Kinney*, district courts in California have held that the undue burden

11   defense does not apply to new construction or alterations. *See, e.g.*, *Lonberg v. City of*

12   *Riverside*, No. EDV970237 SGLAJWX, 2007 WL 2005177, *6 (C.D. Cal. May 16,

13   2007) (The "City's duty to construct accessible curb ramps after January 26, 1992, *is*

14   *mandatory* and the City has offered no cognizable defense for failing to do so regarding

15   the curb ramps at issue here.") (emphasis added); *Californians for Disability Rights, Inc.*

16   *v. Cal. Dep't of Transp.*, No. C 06-5125 SBA, 2009 WL 2987115, *2 (N.D. Cal.

17   Sept. 15, 2009) (finding that "the undue burden defense set forth in section 35.150 is

18   inapplicable to new construction or alterations, which are governed by section 35.151 –

19   which contains no such defense," and granting plaintiffs' motion *in limine* to exclude

20   evidence in support of the undue burden defense). Many other courts agree. *See, e.g.*,

21   *Anderson v. Pa. Dep't of Pub. Welfare*, 1 F. Supp. 2d 456, 464 (E.D. Pa. 1998) ("[T]he

22   provisions applicable to new construction and alterations do not provide an undue

23   burden defense."); *Ability Ctr. of Greater Toledo v. City of Sandusky*, 133 F. Supp. 2d

24   589, 591-92 (N.D. Ohio 2001) (finding that city violated the ADA by failing to install

25   accessible curb ramps when repairing or altering sidewalks and noting that the standard

26   for new construction and alterations is "more stringent" than for existing facilities).

27   The Central District court in *Lonberg* further agreed with the Third Circuit's

28   decision in *Kinney* that when a city undertakes to resurface its streets, it is altering the

13

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF -

437155-13

1  streets.  *Lonberg*, 2007 WL 2005177, *6.  The district court also found, consistent with

2  *Kinney*, that this street alteration meant "the City was obligated to bring the curb ramps

3  located adjacent to such work into conformance with the federal and state new

4  construction regulations."  *Id.*  The court in *Lonberg* agreed with *Kinney* that resurfacing

5  streets is an alteration that triggers the obligation to install curb ramps regardless of cost.

6          Thus, the ADA's legislative history and implementing regulations, and the

7  holdings of *Kinney*, *Pierce*, *Lonberg*, and *Californians for Disability Rights*, preclude

8  Defendant from asserting an affirmative defense of undue burden with respect to new

9  construction and alterations.  Plaintiffs ask the Court to hold that the City (1) cannot as a

10  matter of law under the ADA assert its Seventh and Fifty-Fourth Affirmative Defenses

11  with respect to any curb ramps, sidewalks, or other parts of the pedestrian rights of way

12  that have been altered or constructed since January 26, 1992; (2) cannot as a matter of

13  law under Section 504 of the Rehabilitation Act assert its Seventh and Fifty-Fourth

14  Affirmative Defenses with respect to any curb ramps, sidewalks, or other parts of the

15  pedestrian rights of way that have been altered or constructed since June 3, 1977; and

16  (3) cannot as a matter of law under the ADA or Section 504 assert its Seventh and Fifty-

17  Fourth Affirmative Defenses with respect to any curb ramps that are located adjacent to,

18  or should have been installed adjacent to, streets that have been resurfaced, altered, or

19  constructed since June 3, 1977.

**VI.     THE CITY CANNOT ASSERT AN UNDUE BURDEN DEFENSE WITH RESPECT TO EXISTING FACILITIES COVERED BY SECTION 504 OF THE REHABILITATION ACT.**

23          Defendant's Seventh and Fifty-Fourth Affirmative Defenses are also foreclosed

24  with respect to pedestrian rights of way, sidewalks, and curb ramps that were constructed

25  prior to and that have not been altered since June 3, 1977, and therefore constitute

26  existing facilities under Section 504 of the Rehabilitation Act.  Unlike the ADA

27  regulations for existing facilities discussed above, *see* 28 C.F.R. § 35.150, the plain

28  language of the Section 504 regulations do not contain an undue burden defense for

14

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF -

437155-13

existing facilities of entities that receive federal funding.  As far as Plaintiffs are aware, the only court that has addressed this question has held that there is no undue burden defense to the obligation to provide program access to the existing facilities of recipients of federal financial assistance (i.e. facilities constructed prior to June 3, 1977 that have not been altered since that date).  *Putnam v. Oakland Unified Sch. Dist.*, No. C-93-3772 CW, 1995 WL 873734, *13 (N.D. Cal. June 9, 1995).

A.     **The Plain Language of the Rehabilitation Act Regulations Demonstrate that Neither Congress Nor the Federal Agencies Intended to Provide a Defense for Undue Burden.**

       The Rehabilitation Act, enacted in 1973, is a precursor to the ADA.  Section 504 of the Rehabilitation Act requires any federal agency and any entity receiving federal financial assistance to make its programs and activities accessible to persons with disabilities.  *See* 29 U.S.C. § 794(a) (No individual "shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . . .").  Sidewalks, curb ramps, cross walks, and other pedestrian rights of way are facilities covered by the Rehabilitation Act.  45 C.F.R. § 84.3(i) ("Facility means all or any portion of buildings, structures, equipment, roads, walks, parking lots, or other real or personal property or interest in such property."); 28 C.F.R. § 41.3(f) (same).  They are also a "program or activity" of the City of Los Angeles because "the Rehabilitation Act defines 'program or activity' as 'all of the operations of' a qualifying local government."  *Barden*, 292 F.3d at 1074, 1077 (holding that public sidewalks are a service, program, or activity of a city within the meaning of Title II and the Rehabilitation Act); *Frame*, 657 F.3d at 224, 227-228.

       After passage of the Rehabilitation Act, the President designated the Department of Health, Education, and Welfare ("HEW") as the agency "responsible for coordinating enforcement of [Section] 504."  *Consol. Rail Corp. v. Darrone*, 465 U.S. 624, 634, 104

15

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF -

437155-13

1   S. Ct. 1248, 79 L. Ed. 2d 568 (1984).  As a result, following notice and comment on its

2   proposed rulemaking, in 1977 HEW issued the first regulations implementing the

3   Rehabilitation Act.  Those regulations apply to recipients of federal financial assistance

4   and "appear without change in the current regulations issued by the Department of

5   Health and Human Services," the successor to HEW.  *Bragdon v. Abbott*, 524 U.S. 624,

6   632, 118 S. Ct. 2196, 141 L. Ed. 2d 540 (1998).  The regulations "are of particular

7   significance because, at the time, HEW was the agency responsible for coordinating the

8   implementation and enforcement of [Section] 504 . . . ."  *Id.*  HEW did not act alone in

9   formulating the regulations because "the responsible congressional committees

10   participated in their formulation, and both these committees and Congress itself

11   endorsed the regulations in their final form."  *Consol. Rail*, 465 U.S. at 634.  The

12   Supreme Court has emphasized many times that the HEW regulations "were drafted

13   with the oversight and approval of Congress" and "provide 'an important source of

14   guidance on the meaning of [Section] 504.'"  *Sch. Bd. of Nassau Cnty., Fla. v. Arline*,

15   480 U.S. 273, 279, 107 S. Ct. 1123, 94 L. Ed. 2d 307 (1987) (quoting *Alexander v.*

16   *Choate*, 469 U.S. 287, 304, n.24, 105 S. Ct. 712, 83 L. Ed. 2d 661 (1985)).  Thus, the

17   plain language of the Health and Human Services regulations is entitled to substantial

18   deference and should be given its plain meaning.  That plain language does not provide

19   an undue burden defense for making existing facilities operated by federal funding

20   recipients accessible to and usable by people with disabilities.  45 C.F.R. § 84.22.

21         Following the promulgation of regulations by HEW and amendments to the

22   Rehabilitation Act, in 1980 the President transferred responsibility for coordinating the

23   Section 504 regulations to the Department of Justice.  28 C.F.R. § 41.1.  The regulations

24   drafted by the Department of Justice served as the model for other agency regulations,

25   requiring the later-promulgated regulations to be consistent with the Department of

26   Justice's regulations.  *Id.* § 41.4(a) ("Each agency shall issue . . . a regulation to

27   implement section 504 with respect to programs and activities to which it provides

28   assistance.  The regulation shall be consistent with this part.").  As with the regulations

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF -

437155-13

1  promulgated by the Department of Health and Human Services, the Department of

2  Justice regulation made clear that recipients of federal funding cannot assert undue

3  burden to defend against Rehabilitation Act claims with respect to providing program

4  access to existing facilities.  28 C.F.R. § 41.57.  Instead, the regulation requires

5  recipients to make their "programs or activities in existing facilities" accessible to and

6  usable by people with disabilities "as soon as practicable, but in no event later than three

7  years after the effective date of the agency regulation."  *Id.* § 41.57(b).  The regulation is

8  written in mandatory language, requiring that funding recipients "shall operate each

9  program or activity so that the program or activity, when viewed in its entirety, is

10  readily accessible to and usable by handicapped persons."  *Id.* at § 41.57(a).  The model

11  regulation also envisions "structural changes," but nowhere does it provide an exception

12  for undue burden or financial hardship.  *Id.* at § 41.57(b).[3]  Thus, both the model

13  regulations promulgated by HEW (with the oversight and approval of Congress) and the

14  model regulations promulgated by the Department of Justice provide no undue burden

15  defense with respect to program access to existing facilities of recipients of federal

16  funding.  45 C.F.R. § 84.22; 28 C.F.R. § 41.57.  This is true of other Rehabilitation Act

17  regulations as well.  *See*, *e.g.*, 49 C.F.R. Part 27 (Department of Transportation

18  regulations for recipients of federal financial assistance).

19       Applying the plain language of the Rehabilitation Act regulations, a court in the

20  Northern District of California has held that a defendant school district could not argue,

21  as a defense to Rehabilitation Act claims, that remedying architectural barriers to school

22  entrances, ramps, classrooms, bathrooms, auditoriums, and other seating areas at

23  existing high schools constructed prior to 1977 would be too costly.  *Putnam*, 1995 WL

24  873734 at *13.  The court noted that the "[Section] 504 regulations . . . require that

25

26  _____

[3] The only exception in the Department of Justice regulation is for "particular mode[s] of transportation," such as "a subway system," whose accessibility would require "extraordinarily expensive structural changes" to existing facilities. 28 C.F.R. § 41.57(b). Such transportation systems may be exempt from the three-year deadline for compliance, but still must be made accessible "within a reasonable and definite period."  *Id.*

27

28

1  programs be made readily accessible, with no exception allowed for financial burden."

2  *Id.* at *13-14 (distinguishing other cases applying the undue burden defense because

3  they "do not address the affirmative requirement to make programs accessible, which is

4  not subject to a financial burden exception under Section 504").  Thus, despite a factual

5  showing of the financial condition of the school district that was sufficient to raise

6  triable issues of fact as to whether making its high schools accessible would be an undue

7  burden under Title II of the ADA, the court ruled that this same evidence would not be

8  relevant to the Section 504 claim.  *Id.*  The Ninth Circuit recently cited *Putnam* with

9  approval in *Pierce*, 526 F.3d at 1221 n.38 .  *Putnam*'s reasoning is sound, wholly

10 consistent with the plain language of the Section 504 regulations, and should be adopted

11 by this Court.

12       The *Putnam* court based its decision in part on the fact that while the existing

13 facilities regulations do not contain an undue financial burden defense, other

14 Section 504 regulations do contain an undue burden defense.  *See Putnam*, 1995 WL

15 873734 at *13 (noting that 45 C.F.R. § 84.12 contains an undue burden defense in the

16 context of reasonable accommodations for job applicants and employees).  Regulations

17 related to employment practices by entities that receive federal financial assistance

18 explicitly provide for the defense of undue financial burden.  *See* 45 C.F.R. §§ 84.12(a)

19 & (c).  Indeed, when announcing the first Rehabilitation Act regulations in 1977, the

20 Secretary of HEW explicitly stated that the regulations applied different standards to

21 recipients of federal funding depending on whether they are acting in the capacity of an

22 employer or a service provider.  HEW announced that "[*a*]*s employers*, recipients must

23 make reasonable accommodation . . . unless the accommodation would cause the

24 employer undue hardship," yet "[*a*]*s providers* of services, recipients are required to

25 make programs operated in existing facilities accessible to handicapped persons . . . ,"

26 without any exception for undue burden or hardship.  42 Fed. Reg. 22,676 (May 4,

27 1977) (emphasis added).  HEW also recognized that "ending discriminatory practices

28 and providing equal access to programs may involve major burdens and costs on some

18

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF -

437155-13

1   recipients." *Id.* But HEW forcefully declared that "[t]hose burdens and costs, to be

2   sure, provide no basis for exemption from section 504 or this regulation: Congress'

3   mandate to end discrimination is clear." *Id.* While those burdens and costs "were taken

4   into account in the regulation," such as by providing that not every existing facility need

5   be made accessible so long as the entity's program is accessible when viewed in its

6   entirety, the program accessibility regulation for existing facilities simply did not

7   provide the same undue burden defense as was provided for employment practices. *Id.*

8   at 22,676-77.

9        The undue burden defense also appears in Rehabilitation Act regulations

10  governing programs carried out by federal agencies themselves, as opposed to recipients

11  of federal funding. For example, the regulation pertaining to program accessibility at

12  existing facilities operated by the Department of Justice explicitly provides that the

13  agency is not required "to take any action that it can demonstrate would result in . . .

14  undue financial and administrative burdens." 28 C.F.R. § 39.150(a)(2). Similarly, the

15  regulation pertaining to program accessibility at existing facilities operated by the

16  Department of Transportation excuses the Department from taking any action that

17  would demonstrably result "in undue financial or administrative burdens." 49 C.F.R.

18  § 28.150(a)(3); *see also* 45 C.F.R. § 85.42(a)(2) (undue burden defense found in

19  regulation governing existing facilities operated by the Department of Health and

20  Human Services).

21       These regulations for programs conducted by federal agencies stand in sharp

22  contrast to the regulations governing program access to existing facilities of recipients

23  of financial assistance from these same federal agencies; none of the latter regulations

24  make *any* mention of the undue burden defense. *See* 28 C.F.R. § 41.57; 45 C.F.R.

25  § 84.22; 49 C.F.R. Part 27. Comparing the two categories of regulations – those

26  governing federally conducted programs and activities versus those governing recipients

27  of federal funding – demonstrates that HEW and the Department of Justice, agencies

28  tasked with promulgating Rehabilitation Act regulations, knew how to limit access

19

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF -

437155-13

requirements based on financial burden but intentionally chose not to do so with respect

to recipients of federal financial assistance.  That choice, it should be noted, was

endorsed by Congress and is deserving of substantial deference.  *Arline*, 480 U.S. at

279; *Consol. Rail*, 465 U.S. at 634.

**B.**   **When Enacting the ADA, Congress Recognized that the Rehabilitation Act Regulations Regarding Program Access to Existing Facilities Lacked an Undue Burden Defense.**

When Congress enacted the ADA, it recognized the difference between the way

federal agencies and recipients of federal money are treated under Rehabilitation Act

regulations. Congress directed the Department of Justice to model the ADA's

implementing regulations on the Rehabilitation Act regulations.  Although Congress

dictated that the ADA Title II regulations should be consistent with the Rehabilitation

Act regulations for recipients of federal financial assistance, it made an exception for the

regulations governing program access to existing facilities.  42 U.S.C. § 12134(b)

("Except for 'program accessibility, existing facilities', and 'communications', [ADA

Title II] regulations . . . shall be consistent with this chapter and with the coordination

regulations under part 41 of title 28, Code of Federal Regulations (as promulgated by

the Department of Health, Education, and Welfare on January 13, 1978), applicable to

recipients of Federal financial assistance . . . .").  The explanation for this exception is

simple.  Congress intended the ADA regulations governing program access to existing

facilities to provide an undue burden defense like that available under the Rehabilitation

Act for programs conducted by federal agencies.[4]  It therefore directed that the ADA

program access regulation be "consistent with regulations and analysis as in part 39 of

title 28 of the Code of Federal Regulations, applicable to federally conducted activities .

. . ." *Id.*  In other words, Congress recognized that no undue burden defense exists

---

[4] The Rehabilitation Act regulations governing federally conducted programs contain an undue burden defense. *See*, *e.g.*, 28 C.F.R. § 39.150(a)(2) (Department of Justice regulation); 45 C.F.R. § 85.42(a)(2) (Department of Health and Human Services regulation (formerly HEW)).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF -

437155-13

1    under the Rehabilitation Act regulations for recipients of federal funding,[5] as opposed to

2    programs operated by federal agencies.  Congress did this because, in contrast to the

3    Rehabilitation Act, Congress intended the ADA to provide an undue burden defense for

4    public entities with respect to existing facilities.  *See* H.R. Rep. No. 101-485 (III) at 50

5    (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 473 (expressing intent that the undue

6    burden or hardship defense to ADA claims be limited to "program access in existing

7    facilities").

8            Congress has never amended the Rehabilitation Act to include an undue burden

9    defense for existing facilities.  It has never repealed the Rehabilitation Act regulations

10   or required the Department of Health and Human Services or the Department of Justice

11   to rewrite the regulations governing recipients of federal financial assistance,

12   regulations to which the Supreme Court has granted substantial deference due to

13   Congress' oversight and endorsement.  *Arline*, 480 U.S. at 279; *Consol. Rail*, 465 U.S.

14   at 634.  In fact, Congress referred to these regulations and left them intact when it

15   directed the Department of Justice to promulgate regulations under the ADA.  *See* 42

16   U.S.C. § 12134(b).  The Court should therefore give effect to the plain meaning of the

17   Rehabilitation Act regulations.

18           There is no conflict between the ADA and Rehabilitation Act regulations.  If a

19   public entity receives federal financial assistance, it is subject to the Rehabilitation Act

20   regulations, and it cannot rely on any exception for undue financial burden with respect

21   to providing program access to existing facilities.  28 C.F.R. § 41.57; 45 C.F.R. § 84.22.

22   In contrast, the ADA regulations governing all public entities, including those that do

23   not receive federal funding, provide that public entities need not take action to make

24   services, programs, or activities at existing facilities accessible if doing so would be

25

26   ─────────────────
     [5] The Rehabilitation Act regulations governing recipients of federal funding do not
     contain an undue burden defense with respect to program access to existing facilities.
27   *See, e.g.*, 28 C.F.R. § 41.57 (regulation promulgated by Department of Justice); 45
     C.F.R. § 84.22 (regulation promulgated by Department of Health and Human Services,
28   formerly HEW).

437155-13

1  unduly burdensome.  28 C.F.R. § 35.150(a)(3).  The two regulations, therefore, "are

2  capable of co-existence," and "it is the duty of the courts, absent a clearly expressed

3  congressional intention to the contrary, to regard each as effective."  *Morton v. Mancari*,

4  417 U.S. 535, 551, 94 S. Ct. 2474, 41 L. Ed. 2d 290 (1974).

5  Congress' choice not to provide the defense of undue financial burden under

6  Section 504 of the Rehabilitation Act makes sense in light of the fact that public entities

7  subject to the Act are receiving federal financial assistance, whereas public entities

8  covered only by Title II of the ADA do not receive federal funding in exchange for

9  improved accessibility.  As the Tenth Circuit has explained, "[u]nlike the blanket

10  involuntary coverage of the ADA, however, the Rehabilitation Act's coverage extends

11  only to entities that choose to receive federal assistance.  The balance between

12  prohibiting discrimination and protecting small entities is struck differently in the

13  context of the Rehabilitation Act, as the entities covered by the Rehabilitation Act have

14  chosen to receive financial benefits in exchange for prohibitions on their ability to

15  discriminate."  *Schrader v. Fred A. Ray, M.D., P.C.*, 296 F.3d 968, 974 (10th Cir. 2002).

16  Accordingly, permitting the undue burden defense for public entities' existing facilities

17  under the ADA, but not under the Rehabilitation Act, is a logical exercise of Congress'

18  spending powers, under which it enacted the Rehabilitation Act.  *See* 42 U.S.C.

19  § 12101(b)(4).

20  The City may also argue that courts have treated the ADA and the Rehabilitation

21  Act as similar statutes, and therefore any undue burden exemption for existing facilities

22  under the ADA regulations must necessarily carry over to the previously-existing

23  Rehabilitation Act regulations.  This is incorrect.  The ADA itself expressly states that it

24  does not preempt or limit any aspect of any other federal law that provides greater

25  protection to persons with mobility disabilities.  Section 501(b) of the ADA provides in

26  pertinent part: "Nothing in this chapter shall be construed to invalidate or limit the

27  remedies, rights, and procedures of any Federal law or law of any State or political

28  subdivision of any State or jurisdiction that provides greater or equal protection for the

rights of individuals with disabilities than are afforded by this chapter."  42 U.S.C. § 12201(b).  The plain meaning of the foregoing statutory language is confirmed by the legislative history of the ADA, which states that "[u]nder Section 501(b) of the ADA, all of the rights, remedies and procedures that are available to people with disabilities under other federal laws, including Section 504 of the Rehabilitation Act . . . are not pre-empted by this Act."  H.R. Rep. No. 101-485 (III), at 70, reprinted in U.S.C.C.A.N. 445, 493 (1990).

Thus, because the Rehabilitation Act provides *greater* rights and protections to persons with mobility disabilities – by denying the undue burden defense with respect to program access to existing facilities – those greater rights and remedies are expressly preserved by the ADA.  42 U.S.C. § 12201(b).  Any contention that Title II of the ADA and Section 504 of the Rehabilitation Act are identical, and must be construed in precisely the same manner, is contrary to the savings clause of the ADA itself.  It therefore cannot be argued that a public entity receiving federal financial assistance should be permitted to graft the undue burden defense from an ADA regulation onto a Rehabilitation Act regulation when no such defense is provided by the plain language of the Rehabilitation Act's program access regulation.  28 C.F.R. § 41.57.

The argument that the two laws are identical is also belied by the language of the regulations themselves.  While the statutes and implementing regulations are similar in most respects, the plain language of the ADA regulations differs from that of the Rehabilitation Act regulations with respect to program access to existing facilities.  Congress recognized this when it directed the Department of Justice to draft ADA regulations for existing facilities that tracked regulations for federal programs, not programs carried out by recipients of federal funding.  42 U.S.C. § 12134(b).  Indeed, the Ninth Circuit and other circuit courts have recognized that the ADA and Rehabilitation Act are not entirely the same and at times must be interpreted differently.  *See*, *e.g.*, *Fleming v. Yuma Reg'l Med. Ctr.*, 587 F.3d 938, 943 (9th Cir. 2009) (Rehabilitation Act covers independent contractors while the ADA does not and noting

23

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF -

437155-13

1    that "[w]ithout additional direction from Congress, we are hesitant to reduce the express

2    scope of the Rehabilitation Act by wholesale adoption of definitions from another act");

3    *Baird v. Rose*, 192 F.3d 462, 469 (4th Cir. 1999) (finding differences in the plain

4    language of the statutes and noting that "the ADA and the Rehabilitation Act are not

5    exactly the same in all respects, and thus, while the two should be construed to impose

6    the same requirements when possible, there are situations in which differences between

7    the statutory provisions dictate different interpretations"); *Schrader*, 296 F.3d at 971-73

8    (holding that although the ADA does not apply to employers with fewer than 15

9    employees, the Rehabilitation Act does).  The stark differences between the plain

10   language of the ADA regulations for public entities and the Rehabilitation Act

11   regulations for recipients of federal financial assistance mandate that this is a

12   circumstance where the ADA and the Rehabilitation Act must part ways.

13                      **VII.    CONCLUSION**

14          For the foregoing reasons, Plaintiffs respectfully request that this Court grant

15   Plaintiffs' motion for partial summary judgment or, in the alternative, motion *in limine*.

16   Plaintiffs ask the Court to rule that public sidewalks within the City of Los Angeles are

17   covered by Title II of the ADA and Section 504 of the Rehabilitation Act, and that

18   therefore Defendant cannot assert its First, Fifth, Sixth, Eighth, Ninth, Thirteenth, and

19   Fourteenth Affirmative Defenses with respect to public sidewalk coverage by the ADA

20   or Section 504.  Plaintiffs ask the Court to rule that Defendant cannot assert its Seventh

21   and Fifty-Fourth Affirmative Defenses of undue burden with respect to Plaintiffs' ADA

22   and Section 504 claims for facilities that have been newly constructed or altered since

23   Title II of the ADA went into effect on January 26, 1992, and since the Section 504

24   regulations went into effect on June 3, 1977.  Plaintiffs also ask the Court to rule that

25   Defendant cannot assert its Seventh and Fifty-Fourth Affirmative Defenses of undue

26   burden with respect to Plaintiffs' Rehabilitation Act claims for program access to

27   existing facilities that were constructed prior to June 3, 1977 and that have not been

28   altered since that date.

                                        24

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF -

437155-13

Dated:  November 28, 2012

Respectfully submitted,

GOLDSTEIN, DEMCHAK, BALLER,
   BORGEN & DARDARIAN


 s/ David Borgen
David Borgen (SBN 99354)
dborgen@gdblegal.com
Linda M. Dardarian (SBN 131001)
ldardarian@gdblegal.com
Jason H. Tarricone (SBN 247506)
jtarricone@gdblegal.com
GOLDSTEIN, DEMCHAK, BALLER,
   BORGEN & DARDARIAN
300 Lakeside Drive, Suite 1000
Oakland, CA  94612
(510) 763-9800
(510) 835-1417 (Fax)

ATTORNEYS FOR THE PLAINTIFF CLASS

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF -

437155-13