# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK WILLITS, JUDY GRIFFIN, BRENT PILGREEN, and CALIF, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES, a public entity, et al.,<br><br>Defendant. | CASE NO. CV 10-5782 CBM (RZx)<br><br>CLASS ACTION<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

The matter before the Court is Plaintiffs' Motion for Partial Summary Judgment ("Motion"). [Docket No. 179.]

## I. PROCEDURAL AND FACTUAL OVERVIEW

### A. The Substantive Legal Dispute

Plaintiffs allege that Defendants City of Los Angeles ("the City" or "Defendant") unlawfully failed, and are failing, to properly install and maintain accessible pedestrian rights of way, including curb ramps, sidewalks, crosswalks, pedestrian crossings, and other walkways ("pedestrian rights of way"). (Compl. at ¶ 3.) [Docket No. 1.] Plaintiffs allege that the pedestrian rights of way, when viewed in their entirety, suffer from numerous deficiencies, including: (1) unsafe, non-compliant, or missing ramps; (2) broken pedestrian rights of way that are cracked, crumbled, steep, sunken, or uneven or that have improper slopes or broken and inaccessible surfaces; (3) physical obstacles on the sidewalk between intersections, such as improperly placed signs, light poles, newspapers or bus stop benches; and (4) apron parking. (Compl. at ¶¶ 5, 24.)

According to Plaintiffs, such deficiencies are directly attributable to Defendants' policies and practices, or lack thereof, with respect to the City's pedestrian rights of way and disability access. (*Id.* at ¶¶ 5-6.) Plaintiffs allege that Defendants' failure to install and maintain such pedestrian rights of way constitutes a systematic denial of meaningful access and discrimination that, in turn, violates federal and state nondiscrimination statutes. (*Id.*)

### B. Relevant Procedural History

On August 4, 2010, Plaintiffs filed a class action complaint alleging violations of (1) the Americans with Disabilities Act ("ADA"); (2) Section 504 of the Rehabilitation Act; (3) California Government Code § 11135; (4) the Unruh Civil Rights Act, California Civil Code § 51; (5) California Government Code § 4450; and (6) the California Disabled Persons Act (the "CDPA"), California Civil

Code § 54. The Court previously dismissed without prejudice Plaintiffs' state law claims. [Docket Nos. 53, 57.] The Court has certified the class. [Docket No. 59.]

## II.   STANDARD OF LAW

Summary judgment against a party is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations. . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets its initial burden, the nonmoving party must then set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *see also* Fed. R. Civ. P. 56(c)(1)(B).

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence and draws all inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(c). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'n Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

Partial summary judgment is also appropriate for "part of each claim or defense." Fed. R. Civ. P. 56(a). Rule 56 "make[s] clear that summary judgment may be requested as to any issue (any 'part' of a claim or defense) . . . ." William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, *Federal Civil Procedure Before Trial* § 14:36 (Nat'l ed., Rutter Group 2012). The interpretation of a statute is a question of law for the court to decide and therefore appropriate for summary judgment. *Forest Conservation Council v. Rosboro Lumber Co.*, 50 F.3d 781, 783 (9th Cir. 1995).

## III. DISCUSSION

Plaintiffs' Motion seeks partial summary judgment that:

(1) Public sidewalks in the City of Los Angeles are services, programs, activities, and facilities covered by Title II of the Americans with Disabilities Act ("ADA"), programs, activities, and facilities covered by Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and are subject to the access requirements of both federal laws. Plaintiffs therefore ask the Court to rule that the City may not assert its First, Fifth, Sixth, Eighth, Ninth, Thirteenth, and Fourteenth Affirmative Defenses with respect to public sidewalk coverage by Title II and Section 504.

(2) Under Title II of the ADA, there is no undue burden defense available to public entities for failure to make their facilities that have been newly constructed or altered since January 26, 1992, the effective date of the ADA, readily accessible to and usable by persons with disabilities. Plaintiffs therefore ask the Court to rule that the City may not assert its Seventh and Fifty-Fourth Affirmative Defenses of undue burden with respect to Plaintiffs' ADA claims for City facilities that have been newly

1    constructed or altered since the ADA went into effect on January 26, 1992.

3    (3) Under Section 504 of the Rehabilitation Act, there is no undue burden
4    defense available to recipients of federal financial assistance for failure to
5    make their facilities that have been newly constructed or altered since June
6    3, 1977, the effective date of the Rehabilitation Act regulations, readily
7    accessible to and usable by persons with disabilities. Plaintiffs therefore
8    ask the Court to rule that the City may not assert its Seventh and Fifty-
9    Fourth Affirmative Defenses of undue burden with respect to Plaintiffs'
10   Section 504 claims for City facilities that have been newly constructed or
11   altered since the Section 504 regulations went into effect on June 3, 1977.

13   (4) Under Section 504 of the Rehabilitation Act, there is no undue burden
14   defense available to recipients of federal financial assistance for failure to
15   make their facilities that were in existence prior to June 3, 1977, the
16   effective date of the Rehabilitation Act regulations, readily accessible to
17   persons with disabilities. Plaintiffs therefore ask the Court to rule that the
18   City may not assert its Seventh and Fifty-Fourth Affirmative Defenses of
19   undue burden with respect to Plaintiffs' Section 504 claims for program
20   access to existing facilities that were constructed prior to June 3, 1977, and
21   that have not been altered since that date.

**A.     Whether Sidewalks Are a Service, Program, or Activity Covered by Title II of the ADA and Section 504 of the Rehabilitation Act**

Plaintiffs argue that sidewalks are subject to the access requirements of Title II of the ADA and Section 504 of the Rehabilitation Act because Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

The ADA defines "public entity" as "any State or local government [and] department, agency, special purpose district, or other instrumentality of a State or States or local government.'" 42 U.S.C. § 12131(1); *Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001).

*Lee* held that "the ADA's broad language brings within its scope 'anything a public entity does.'" 250 F.3d at 691 (quoting *Yeskey v. Penn. Dep't of Corr.*, 118 F.3d 168, 171 & n.5 (3d Cir. 1997)). "[M]aintaining public sidewalks is a normal function of a city and without a doubt something that the [City] does. Maintaining their accessibility for individuals with disabilities therefore falls within the scope of Title II." *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002) (citations omitted). The *Barden* court stated that the inclusion of sidewalks within the definition of "services, programs, or activities" of a local government is consistent with the plain language of the Rehabilitation Act, which defines "program or activity" as "all of the operations of" a local government. *Id*. at 1077.

In *Simpson v. City of Charleston*, the Southern District of West Virginia held that although a city enacted an ordinance holding landowners responsible for adjacent sidewalks, the city had authority over its sidewalks such that it was required to draft a transition plan pertaining to curb ramps pursuant to 28 C.F.R. § 35.150(d)(2). 22 F. Supp. 2d 550, 554 (S.D.W. Va. 1998). The Court held, however that under Title III of the ADA, which unlike Title II is explicitly premised on ownership, leasing, or operation of a public accommodation, the owner or lessor of the adjacent land had a duty to remove barriers in existing sidewalks. *Id.* at 555. Because that was a Title III case, it is not particularly

6

helpful. In *Culvahouse v. City of LaPorte*, an Indiana district court found a city responsible for maintaining its sidewalks under the ADA, but in that case Indiana municipalities had exclusive jurisdiction over sidewalks according to Ind. Code § 36-1-3-9(a) and case law. *See* 679 F. Supp. 2d 931, 940-41 (N.D. Ind. 2009).

Consistent with these cases, the Court makes the following findings, to be used for all purposes in this litigation:

- Any public sidewalk over which the City of Los Angeles has responsibility to inspect and notify property owners of repair needs is a "program, service, or activity" within the meaning of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973.
- The City of Los Angeles is a "public entity" within the meaning of Title II of the ADA.

To the extent that the City's First, Fifth, Sixth, Eighth, Ninth, Thirteenth, and Fourteenth Affirmative Defenses are based on the theory that public sidewalks are not covered by Title II of the ADA or Section 504 of the Rehabilitation Act, the Court rules that the City may not assert those affirmative defenses with respect to those public sidewalks over which the City of Los Angeles has responsibility to inspect and notify property owners of repair needs is a "program, service, or activity" within the meaning of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973.

**B.     Whether the City May Assert an Undue Burden Defense With Respect to New Construction or Alterations Under Title II of the ADA and Section 504 of the Rehabilitation Act**

The City's Seventh and Fifty-Fourth Affirmative Defenses assert that the city cannot be held liable for failing to make its sidewalks and pedestrian rights of way accessible to people with mobility disabilities because doing so would result in an undue financial burden.

Such a defense is foreclosed under Title II of the ADA with respect to streets, pedestrian rights of way, sidewalks, and curb ramps that have been newly constructed or altered since January 26, 1992, and under Section 504 of the Rehabilitation Act with respect to streets, pedestrian rights of way, sidewalks, and curb ramps that have been newly constructed or altered since June 3, 1977. Sidewalks, crosswalks, curb ramps, and other parts of the pedestrian right of way are "facilities" and "services, programs, or activities" under Title II of the ADA and Section 504. See 28 C.F.R. § 35.104; 45 C.F.R. § 84.3(i); *Barden*, 292 F.3d at 1076-77. Title II of the ADA provides an undue financial burden defense for facilities already in existence as of January 26, 1992, but not for facilities constructed or altered after that date. 28 C.F.R. § 35.150. The Rehabilitation Act provides similarly for facilities constructed or altered after June 3, 1977.

The Court finds that the City may not assert its Seventh and Fifty-Fourth Affirmative Defenses related to undue financial burden as to "newly constructed or altered" pedestrian rights of way, sidewalks, and curb ramps as defined under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

Plaintiffs seek to preclude Defendants from offering evidence related to its financial situation. That request is denied without prejudice. Requests to preclude specific evidence that could be used for multiple purposes may be brought at a later date as motions in limine.

**C. Whether the City Can Assert an Undue Burden Defense With Respect to Existing Facilities Covered by Section 504 of the Rehabilitation Act**

The parties disagree as to whether there is an undue burden defense under the Rehabilitation Act for existing facilities (as opposed to newly constructed or altered facilities). Unlike the ADA regulations for existing facilities, *see* 28 C.F.R. 35.150, the Section 504 regulations do not contain an explicit undue

1 burden defense for existing facilities.

2     This specific issue has rarely been decided by courts. The Northern District of California held that a school district could not make an undue financial burden defense as to facilities constructed prior to 1977. *Putnam v. Oakland Unified Sch. Dist.*, No. C-93-3772 CW, 1995 WL 873734, at *13 (N.D. Cal. June 9, 1995). The *Putnam* court noted that other Section 504 regulations do contain express undue burden defenses, thus giving more intent to the lack of such a defense in the context of existing facilities. *See id.*

    Moreover, when Congress enacted the ADA (which came after the Rehabilitation Act), it dictated that Title II regulations be consistent with Rehabilitation Act regulations with the exception of program accessibility, existing facilities, and communications regulations. As to existing facilities, the ADA Title II regulations contained an undue burden defense. Congress therefore recognized that no undue burden defense exists under the Rehabilitation Act regulations. Congress has never amended the Rehabilitation Act to include an undue burden defense for existing facilities.

    The Court is not persuaded by the City's cases, as those relate to Section 504 as a whole, rather than specifically to facilities constructed prior to 1977.

    The Court therefore finds that no undue burden defense exists as to pedestrian rights of way, sidewalks, and curb ramps that were constructed prior to and that have not been altered since June 3, 1977, and therefore constitute existing facilities under Section 504 of the Rehabilitation Act. The City may not assert its Seventh and Fifty-Fourth Affirmative Defenses related to undue financial burden as to those facilities.

### IV. REQUESTS FOR JUDICIAL NOTICE

    The Court GRANTS Plaintiffs' Request for Judicial Notice in Support of Plaintiffs' Reply in Support of Motion for Partial Summary Judgment and the City

of Los Angeles's Request for Judicial Notice in Support of Its Opposition to Plaintiffs' Motion for Partial Summary Judgment.

## V. CONCLUSION

The Court **GRANTS** the Motion but denies without prejudice any request to preclude evidence that may be used for multiple purposes.

**IT IS SO ORDERED.**

DATED: _February 25, 2013

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE